UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHARLES FOUNTAIN (#B-34541), ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 10 C 1484 |
| ) | |
| ) | Hon. James B. Zagel |
| WARDEN FRANK SHAW, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

The plaintiff, a state prisoner, has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. The plaintiff claims that the defendants, officials at the Stateville Correctional Center, violated the plaintiff's constitutional rights by subjecting him to inhumane conditions of confinement and by acting with deliberate indifference to his medical needs. More specifically, the plaintiff alleges that he was served a meal tray that contained a dead mouse, and that he was denied adequate medical attention when he suffered a severe adverse reaction to its discovery. This matter is before the court for ruling on the defendants' motion for summary judgment. For the reasons stated in this order, the motion is granted.

## STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Vision Church v. Village of Long Grove*, 468 F.3d 975, 988 (7th Cir. 2006). In determining whether factual issues exist, the court must view all the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Weber v. Universities Research Assoc., Inc.*, 621 F.3d 589, 592 (7th Cir.

2010). The court does not "judge the credibility of the witnesses, evaluate the weight of the evidence, or determine the truth of the matter. The only question is whether there is a genuine issue of fact." *Gonzalez v. City of Elgin*, 578 F.3d 526, 529 (7th Cir. 2009), *citing Anderson v. Liberty Lobby*, 477 U.S. 242, 249-50 (1986).

However, Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Sarver v. Experian Information Solutions*, 390 F.3d 969, 970 (7th Cir. 2004) (citations omitted). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Egonmwan v. Cook County Sheriff's Dept.*, 602 F.3d 845, 849 (7th Cir. 2010), *quoting Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 640-41 (7th Cir. 2008).

## LOCAL RULE 56.1 (N.D. ILL.)

The defendants filed a statement of uncontested material facts pursuant to Local Rule 56.1 (N.D. Ill.). Together with their motion for summary judgment, the defendants included a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" [document no. 49], as required by circuit precedent. That notice clearly explained the requirements of the Local Rules and warned the plaintiff that a party's failure to controvert the facts as set forth in the moving party's statement results in those facts being deemed admitted. *See, e.g., Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).

Local Rule 56.1(b) requires a party opposing a motion for summary judgment to file:

> (3) a concise response to the movant's statement that shall contain
>
> (A) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and
>
> (B) a statement, consisting of short numbered paragraphs, of any additional facts that require denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon.

L.R. 56.1(b).

The district court may require strict compliance with Local Rule 56.1. *See Ammons v. Aramark Uniform Serv., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004); *Bordelon v. Chicago School Reform Board of Trustees*, 233 F.3d 524, 527 (7th Cir 2000) (strict compliance with the local rules governing summary judgment is upheld given the importance of local rules that structure the summary judgment process). Although *pro se* plaintiffs are entitled to lenient standards, compliance with procedural rules is required. *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006); *see also Koszola v. Bd. of Educ. of the City of Chicago*, 385 F.3d 1104, 1108 (7th Cir. 2004). "We have . . . repeatedly held that a district court is entitled to expect strict compliance with [Local] Rule 56.1." *Cichon v. Exelon Generation Co.*, 401 F.3d 803, 809 (7th Cir. 2005).

Despite the admonitions stated above, the plaintiff failed to file a proper response to the defendants' statement of uncontested facts. Instead, he implicitly accepts the defendants' statement of facts--as he must, given that the statement is based almost entirely on his own deposition testimony--but argues that the defendants should have written an incident report and conducted an investigation. He also contends that "there's a well-known fact that Stateville Corr. Center and the N.R.C. has a very bad rodent problem"; however, he provides no evidence

whatsoever to support that factual proposition. A motion for summary judgment "requires the responding party to come forward with the evidence that it has – it is the 'put up or shut up' moment in a lawsuit." *Eberts v. Goderstad* 569 F.3d 757, 767 (7th Cir. 2009) (citations omitted). The plaintiff's conclusory assertions must be disregarded without evidence to support them.

Because the plaintiff is proceeding *pro se*, the court will grant him some leeway and consider the factual assertions he makes in his summary judgment materials. However, the court will entertain the plaintiff's factual statements only to the extent that he could properly testify about the matters asserted. Among other things, a witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Fed. R. Evid. 602.

Given the considerations stated above, the court views the defendants' Rule 56.1 statements supported by the record and not rebutted by the plaintiff to be true and uncontested. [In order to meet its obligation to view the record in the light most favorable to the non-movant, the court has supplemented the defendants' statement of facts with additional facts the plaintiff asserted during his deposition]:

## FACTS

The plaintiff is an Illinois state prisoner, confined at the Stateville Correctional Center at the time of the events giving rise to this action. (Defendants' Exhibit A, Deposition of Charles Fountain, p. 13.) The plaintiff was housed in the Illinois Department of Corrections' Northern Reception Center at Stateville, awaiting assignment to his "permanent" institution. (*Id.*, p. 9.) Defendant Frank Shaw was Stateville's warden at that time. (Complaint, p. 2, ¶ II(A).)

Defendants Kevin Boyer and Dorsey Douglas were, respectively, a sergeant and correctional officer at Stateville, posted in the plaintiff's housing unit. (*Id.*, p. 3.)

On July 15, 2009, defendant Douglas opened the chuckhole to the plaintiff's cell so that the inmate worker could pass the plaintiff's lunchtime meal through the opening. (Plaintiff's Dep., p. 15.) The food was contained within a covered tray when it was handed to the plaintiff. (*Id.*, p. 19.)

The plaintiff sat down in his cell, removed the cover, and began eating his meal. (*Id.*, p. 18.) The tray was divided into three segments, or "pockets." (*Id.*, pp. 18-19.) After he began eating, the plaintiff discovered a small, dead mouse underneath a sausage patty in one of the tray's sections. (*Id.*, pp. 18-20.) Although the plaintiff had already taken a bite of the sausage patty, he did not consume any portion of the mouse. (*Id.*, pp. 20-21.)

The plaintiff notified defendant Douglas that there was a mouse in his meal tray. (*Id.*, p. 20.) At first, Douglas called out that he was passing out meals and that the plaintiff would have to wait; he also initially accused the plaintiff of lying in order to get more food. (*Id.*, pp. 21-22.)

After Douglas finished passing out meal trays, he returned to the plaintiff's cell, looked at the tray, and instructed the inmate food runner to give the plaintiff another tray. (*Id.*, p. 24.) However, the plaintiff refused another tray. (*Ibid.*)

Douglas left and returned about ten minutes later with defendant Boyer. (*Id.*, p. 25.) Boyer asked the plaintiff whether he wanted another food tray but the plaintiff once again confirmed that he did not. (*Ibid.*). Boyer laughed about the plaintiff finding a dead mouse in his food. (*Ibid.*) The plaintiff requested a grievance form, but Douglas sarcastically told him that no forms were available in the receiving unit. (*Id.*, pp. 26, 56.) Douglas also allegedly made a

racially derogatory remark about troublesome inmates who cause problems for the correctional staff. (*Id.*, p. 55.)

The plaintiff asked to see a doctor because his stomach was hurting. (*Id.*, p. 27.) Boyer therefore directed Douglas to send the plaintiff to the health care unit. (*Ibid.*) The plaintiff was given a pass to the health care unit within a half hour. (*Ibid.*) While the plaintiff was waiting to see a physician, he vomited. (*Id.*, pp. 32-33.).

A nurse took the plaintiff's temperature and blood pressure. (*Id.*, p. 29.) The doctor (Aguinaldo[1]) touched the plaintiff's stomach and back and "started feeling on [him]." (*Id.*, p. 30.) The plaintiff told Aguinaldo that he was still feeling "woozy" and "nauseated." (*Ibid.*)

Aguinaldo gave the plaintiff a pink pill, telling him that it was to coat or settle his stomach. (*Id.*, pp. 32, 56.) When the plaintiff asked for a more thorough examination, the doctor responded, "For what? You did nothing but ate off meat with a rodent." (*Id.*, p. 30.) Aguinaldo asked the plaintiff why he was "tripping," observing that, "It ain't nothing. People eat worse than that." (*Ibid.*)

The consultation with Aguinaldo lasted only about two minutes. (*Id.*, p. 34.) Aguinaldo assured the plaintiff that he was "all right," remarking that "People in other places eat rats for a living." (*Ibid.*)

Afterwards, the plaintiff was escorted back to his cell. (*Id.*, p. 35.) He slept most of the rest of the day. (*Ibid.*) When the plaintiff awoke, he still felt lightheaded and nauseated. (*Id.*, p. 36.)

---

[1] By Minute Order of March 16, 2011, the court granted Dr. Aguinaldo's motion to dismiss, finding that the complaint failed to state a tenable claim against him under 42 U.S.C. § 1983.

The next day (July 16, 2009), the plaintiff was relocated to the Logan Correctional Center pursuant to a previously-scheduled transfer order. (*Id.*, p. 42.) While in a holding pen awaiting transfer, the plaintiff asked an unknown assistant warden for a full physical examination. (*Id.*, pp. 37-39.) The assistant warden told the plaintiff that he would be examined when he reached the next facility. (*Id.*, p. 39.) The plaintiff lay on the floor of the holding cell until a correctional officer scolded him for doing so. (*Id.*, p. 41.)

Upon arrival at the Logan Correctional Center, the plaintiff underwent a medical screening by a nurse as part of the intake process. (*Id.*, p. 42.) The plaintiff advised the nurse about the previous day's mouse incident; however, she told him that she was only doing a basic health check and that he would have to submit a request slip to see a doctor. (*Id.*, p. 43.)

On July 23, 2009, the plaintiff submitted a medical request. (*Id.*, p. 44.) The next day, he was seen by a prison physician. (*Ibid.*) The physician gave the plaintiff Pepto Bismol for his nausea and Tylenol "for [his] head." (*Id.*, p. 45.) The plaintiff continued to feel nauseated for several days, but he suffered no lasting ill effects. (*Id.*, p. 57.)

The plaintiff filed a grievance at the Logan Correctional Center concerning the sequence of events at Stateville. (*Id.*, pp 46-47.) The grievance was denied at all levels of review. (*Id.*, pp. 49-53; *see also* Exhibits to Deposition.)

## ANALYSIS

No material facts are in dispute, and the defendants have established that they are entitled to judgment as a matter of law. The matters the plaintiff complains of do not rise to the level of a constitutional violation. While it is entirely unacceptable for an inmate to find a rodent in his food--and while the defendants might have exhibited more sympathy and concern--neither the

discovery of a mouse nor the plaintiff's understandable revulsion implicates the Eighth Amendment.

## I. The Discovery of a Mouse in the Plaintiff's Food Tray

The plaintiff is not entitled to relief under 42 U.S.C. § 1983 for finding a mouse in his food. The Constitution required the defendants to house the plaintiff under "humane conditions" and to provide him with adequate food, among other staples. *Sain v. Budz*, No. 05 C 6394, 2006 WL 539351, *2 (N.D. Ill. Mar. 3, 2006) (Conlon, J.), *citing Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *see also Henderson v. Sheahan*, 196 F.3d 839, 844 (7th Cir. 1999). There is no question that inmates have a constitutional right to an adequate diet. *See, e.g., Antonelli v. Sheahan*, 81 F.3d 1422, 1432 (7th Cir. 1996). "The State must provide an inmate with a 'healthy, habitable environment.' This includes providing nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985) (citations omitted).

However, the Constitution provides only that inmates receive adequate nutrition. Food that is unpalatable, non-tasty, or not aesthetically pleasing does not violate an inmate's civil rights. *McGee v. Monahan*, No. 06 C 3538, 2008 WL 3849917, *8 (N.D. Ill. Aug. 14, 2008) (Zagel, J.) (citations omitted). "The Constitution does not require prison officials to provide the equivalent of hotel accommodations." *United States v. Weathington*, 507 F.3d 1068, 1073 (7th Cir. 2007), quoting *Lunsford v. Bennett*, 17 F.3d 1574, 1579 (7th Cir. 1994).

In order to establish a triable Eighth Amendment claim, a plaintiff must show that: (1) he was "incarcerated under conditions posing a substantial risk of serious harm," and (2) defendant-officials acted with "deliberate indifference" to that risk. *Santiago v. Walls*, 599 F.3d

749, 756 (7th Cir. 2010); *Farmer*, 511 U.S. at 834. The objective element requires a showing that the conditions deny the inmate "the minimal civilized measure of life's necessities," creating an excessive risk to the inmate's health or safety. *Farmer*, 511 U.S. at 834.

In the case at bar, the plaintiff cannot satisfy the objective prong of that test. The discovery of a contaminant on a single occasion is insufficient to establish an Eighth Amendment violation. *See, e.g., Lieberman v. Budz*, No. 00 C 5662, 2010 WL 369614, *7 (N.D. Ill. Jan. 28, 2010) (Coar, J.), *Barbosa v. McCann*, No. 08 C 5012, 2009 WL 2913488, *3 (N.D. Ill. Sep. 8, 2009) (Pallmeyer, J.); *Knox v. Wainscott*, No. 03 C 1429, 2003 WL 21148973, *8 (N.D. Ill. May 14, 2003) (Manning, J.) (citations omitted). "Even a dead mouse in an inmate's meal is only a minimal deprivation without a showing of injury." *McRoy v. Sheahan*, No. 03 C 4718, 2004 WL 1375527, *3 (N.D. Ill. Jun. 17, 2004) (Brown, Mag. J.), citing *Miles v. Konvalenka*, 791 F. Supp. 212, 214 (1992) (Norgle, J.). In a large-scale food operation such as a prison dietary, "oversights such as the presence of crusted food or cigarette ashes on dining room fixtures and utensils on occasion, or even 'foreign objects' in the food can be expected." *Hadley v. Dobucki*, 1995 WL 364225, *3 (7th Cir. May 1, 1995) (unpublished); *see also Franklin v. True*, 76 F.3d 381, *2 (7th Cir. 1996) (citations omitted) (one incident of food poisoning not enough to implicate the Civil Rights Act). Although it is most regrettable that the plaintiff found a mouse in his meal, he cannot recover damages under 42 U.S.C. § 1983 for the unfortunate incident.

## II. Deliberate Indifference to the Plaintiff's Medical Needs

Similarly, the more fully developed record demonstrates that the defendants did not act with deliberate indifference to an objectively serious medical need.

Neither correctional officials nor health care providers may act with deliberate indifference to an inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976);

*Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002). Deliberate indifference has both an objective and a subjective element: the inmate must have an objectively serious medical condition, and the defendant must be subjectively aware of and consciously disregard the inmate's medical need. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Estelle*, 429 U.S. at 103-04; *see also Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002).

The Constitution is violated only if prison officials are inattentive to an objectively "serious" medical need (or signs of a serious medical need). *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010); *Buck v. Lake County Sheriff*, No. 03 C 1740, 2004 WL 2983966, *11 (N.D. Ill. Dec. 23, 2004) (Gottschall, J.). A serious medical condition is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention. *See Foelker v. Outagamie County*, 394 F.3d 510, 512-13 (7th Cir. 2005); *Edwards v. Snyder*, 478 F.3d 827, 830-831 (7th Cir. 2007). A condition is also objectively serious if "failure to treat [it] could result in further significant injury or unnecessary and wanton infliction of pain." *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008), citing *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997).

Under the Seventh Circuit's standard,

> [a] "serious" medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.... [Indications of a serious medical need include] the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.

*See Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997); *see also Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008).

In the instant case, the plaintiff's nausea and disgust, though a natural response to finding a dead mouse in one's food, did not amount to a serious medical need. Again, the plaintiff did not actually bite into the mouse, and his subjective fear that the mouse might have carried disease is entirely speculative and unsubstantiated. Apart from the plaintiff's say-so, there is simply no evidence that his sickened reaction was a matter of the gravity contemplated by *Estelle* and its progeny.

In any event, the record does not support an inference that the defendants acted with deliberate indifference. Certainly, defendants Boyer and Douglas deserve no commendation if, as alleged, they laughed and joked about the mouse and made disparaging remarks to the plaintiff. But notwithstanding their allegedly unprofessional behavior, they immediately sent the plaintiff to the health care unit when he voiced the need for medical treatment.

Despite the fact that the plaintiff was not satisfied with the quality of the care he received, the named defendants cannot be held responsible for the treatment (or non-treatment) provided by employees of the prison's health care unit. Correctional officials are shielded from liability where, as here, a plaintiff receives care from health care professionals. *See, e.g., Johnson v. Snyder*, 444 F.3d 579, 586 (7th Cir. 2006) (fact that plaintiff's medical needs were being addressed by the medical staff insulated the warden from liability); *contrast Reed v. McBride*, 178 F.3d 849, 854-56 (7th Cir. 1999) (warden was required to act where officials allegedly denied an inmate life-sustaining medication and food). "The Governor, and for that matter the Superintendent of Prisons and the Warden of each prison, is entitled to relegate to the prison's medical staff the provision of good medical care." *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). The plaintiff cannot blame any inaction on the part of prison health care staff to defendants Boyer and Douglas, who quickly dispatched the plaintiff to the health care unit when

he asked to see a physician. Even assuming (without finding) that the plaintiff **did** have a serious medical need, prison guards cannot be held liable for any deficient care.

Finally, the plaintiff conceded, both in his deposition and in his belated response to the motion for summary judgment, that Frank Shaw is not a proper defendant in this case. The plaintiff acknowledges that he did not ask Assistant Warden Shaw, but rather another individual, to see a doctor while awaiting the transfer bus to Logan. Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under § 1983, an individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) (citations omitted); *see also Ashcroft v. Iqbal*, — U.S. —, 129 S. Ct. 1937, 1948 (2009) ("[P]laintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"). The doctrine of *respondeat superior* (blanket supervisory liability) does not apply to actions filed under 42 U.S.C. § 1983. *See, e.g., Kinslow v. Pullara*, 538 F.3d 687, 692 (7th Cir. 2008). To be held liable under 42 U.S.C. § 1983, supervisors "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *T.E. v. Grindle*, 599 F.3d 583, 588 (7th Cir. 2010) (quoting *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988).

Moreover, even if it was Shaw to whom the plaintiff spoke, the court discerns no basis for liability. The plaintiff was complaining about feeling nauseated on account of an incident the day before, he had already been seen in the health care unit, he was in a holding pen awaiting transfer to another correctional center, and inmates undergo a medical screening upon arrival at a new facility. Under the circumstances, the assistant warden cannot be held liable for rejecting the plaintiff's request for an examination prior to his imminent departure from Stateville. There

is an ancient maxim, *de minimis non curat lex*, "the law cares not for trifles." *Ehrlich v. Mantzke*, No. 01 C 7449, 2002 WL 265177, *4 (N.D. Ill. Feb. 25, 2002) (Kocoras, J.). The Constitution does not concern itself with *de minimis* matters.

## CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment is granted. If the plaintiff wishes to appeal this final order, he may file a notice of appeal with this court within thirty days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If the plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal. *Evans v. Illinois Dept. of Corrections*, 150 F.3d 810, 812 (7th Cir. 1998). Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also be assessed a "strike" under 28 U.S.C. § 1915(g). The plaintiff is warned that, pursuant to that statute, if a prisoner has had a total of three federal cases or appeals dismissed as frivolous, malicious, or failing to state a claim, he may not file suit in federal court without prepaying the filing fee unless he is in imminent danger of serious physical injury. *Id.*

IT IS THEREFORE ORDERED that the defendants' motion for summary judgment [#44] is granted. The clerk is directed to enter judgment in favor of the defendants pursuant to Fed. R. Civ. P. 56. The case is terminated.

Date: OCT 13 2011      Enter: *James B. Zagel*
JAMES B. ZAGEL
United States District Judge